UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**KEVIN WAYNE GUILLORY, JR.**                     **CIVIL ACTION**

**VERSUS**                                                          **NUMBER 23-3302**

**JAZE BOREL, ET AL.**                                    **DIVISION "5"**

## ORDER

Before the Court is the Motion for Summary Judgment on Behalf of Jaze Borel, Trent Lottinger, Jordan Darcey,[1] Brendon Hebert, and Rashawn Brown (collectively, "Defendants"). (Rec. doc. 18). Plaintiff has filed no opposition to the motion in accordance with the local rules of this Court. Having reviewed the pleading and the case law, the Court rules as follows.

**I.   Background**

Plaintiff was a Department of Corrections prisoner housed in the Terrebonne Parish Criminal Justice Complex ("TPCJC") at the time he filed his Complaint.[2] (Rec. doc. 3). On July 31, 2023, Plaintiff was involved in a physical altercation with his cellmate, Rodney Charles Reed, at the TPCJC. (Rec. doc. 3-2 at 1). Plaintiff maintains that he later learned that Reed was a pre-trial detainee and should not have been housed with Plaintiff – a convicted prisoner – in his cell, Dorm C-100, Cell 103. (*Id*).

---

[1] "Jordan Darcey" is actually "Jordan Dorsey." (Rec. doc. 18-7). For ease of reference, the Court will refer to him as named in Plaintiff's Complaint, "Jorden Darcey."

[2] Plaintiff has since been transferred to the West Baton Rouge Detention Center. (Rec. doc. 19). Defendants filed their Motion for Summary Judgment on December 21, 2023. (Rec. doc. 18). On December 22, 2023 and January 2, 2024, this Court received a notice of change of address from Plaintiff, informing the Court of his transfer to the West Baton Rouge Detention Center. (Rec. docs. 19, 20). Out of an abundance of caution and to ensure that Plaintiff received the Motion for Summary Judgment, this Court re-served Plaintiff with the motion on January 5, 2024. (Rec. doc. 18).

All five Defendants are Correctional Officers at the TPCJC.  Defendants Lottinger and Borel were called to respond to the altercation between Plaintiff and Reed.  (Rec. doc. 18-4 at 1).  Defendant Hebert also responded to the altercation but did not participate in Lottinger's and Borel's actions.  (Rec. doc. 18-8 at 1-2).  Lottinger and Borel attest to – and Hebert corroborates – the following sequence of events during the incident between Plaintiff and Reed.  (Rec. docs. 18-4 at 1, 18-5 at 1-2, 18-8 at 1-2).

Lottinger and Borel ordered Plaintiff and Reed to cease fighting, but Plaintiff and Reed did not comply.  (*Id.* at 2).  Lottinger and Borel decided to pepper spray the two inmates and administered one or two bursts on the men after they again refused to comply with the officers' commands.  (*Id.*).  The inmates then became compliant, and the officers cuffed them.  (*Id.*).  By this time, Defendant Darcey appears to have arrived and helped handcuff the inmates, who were then escorted by Defendant Brown to medical to be examined for any injuries.  (Rec. docs. 18-6 at 2, 18-7 at 1-2).  Plaintiff admits that he and Reed "were escorted out of lockdown with *no injuries*."  (Rec. doc. 3-2 at 1) (emphasis added).  Defendant Brown later provided Plaintiff with a disciplinary report related to the incident, which Plaintiff alleges failed to include Reed's name and that he was a pre-trial detainee at the time of the incident.  (Rec. doc. 3-2 at 1).  Plaintiff does not specifically mention Defendant Hebert in his Complaint, except for his conclusory insertion as a Defendant.

On August 21, 2023, Plaintiff filed his corrected Complaint in which he sues all five officers under 42 U.S.C. § 1983.  (Rec. doc. 3).  Plaintiff challenges the conditions of his confinement because he, a convicted prisoner, should not have been housed with Reed, a pre-trial detainee, in the first instance.  (Rec. doc. 3-2 at 1).

## II.     Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must marshal evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary

judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Further, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). A court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**III.  Law and Analysis**

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

4

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).

> A plaintiff must satisfy three elements to establish Section 1983 liability:
>
> (1) a deprivation of a right secured by the U.S. Constitution or federal law;
> (2) that occurred under color of state law; and
> (3) was caused by a state actor.

*Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted). Because Section 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted). This requires a plaintiff to identify both the constitutional violation and the responsible person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).

At first blush, Plaintiff's claim fails for one simple reason: None of the Defendants had any responsibility for the initial classification of Plaintiff or Reed when they entered the TPCJC or their placement in a lockdown cell with each other. (Rec. docs. 18-4 at 2, 18-5 at 2, 18-6 at 2, 18-7 at 2, 18-8 at 2). The classification and placement of Plaintiff and Reed were not part of Defendants' duties as Correctional Officers. (*See id.*). Plaintiff does not allege claims for being pepper sprayed or for being handcuffed and he readily admits in his Complaint that he was uninjured when he was escorted to medical. (Rec. doc. 3-2 at 1). In

5

other words, Plaintiff does not sue Defendants for any actions in which they were personally involved.  "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (*Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976) (noting that affirmative link needed between injury and conduct of defendant)). Accordingly, there was simply no deprivation of Plaintiff's Constitutional or federal right to prisoner classification and placement in which Defendants were personally involved.

Moreover, the classification of inmates is an administrative function of the prison. *Jones v. Diamond*, 636 F.2d 1364, 1376 (5th Cir. 1981), *overruled on other grounds by Int'l Woodworkers of Am., AFL-CIO & its Loc. No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986).  Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation.  *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979); *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir. 1990). "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates."  *Ricker v. Leapley*, 25 F.3d 1406, 1409 (8th Cir. 1994); *accord Woods v. Edwards*, 51 F.3d 577, 582 (5th Cir. 1995); *Canterino v. Wilson*, 869 F.2d 948, 953 (6th Cir. 1989).  "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law."  *Woods*, 51 F.3d at 581-82 (quotation omitted).

Inmates thus have no protectable property or liberty interest in custodial classification.  *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992); *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir. 1988).  The classification of prisoners is a matter within the discretion of prison officials.  *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990).  Absent an abuse

of discretion, federal courts are loath to interfere with custodial classifications established by prison officials.  *See Jackson v. Cain*, 864 F.2d 1235 (5th Cir. 1989).

In this case, Plaintiff does not allege that the housing decisions within the jail were made indiscriminately or without justification or that his housing assignment was made with an intent to punish him or with deliberate indifference to his safety.  Therefore, his conclusory and unsupported housing claim should be dismissed.

Plaintiff's last claim is that Brown failed to note on the incident report that Reed was a pre-trial detainee at the time that he was housed with Plaintiff.  This Court cannot discern how such an innocuous omission violated Plaintiff's rights as secured by the Constitution or federal law.  This claim is simply frivolous.[3]

## IV.  Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion for Summary Judgment (rec. doc. 18) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this __20th__ day of ___February___, 2024.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] Because the Court dismisses Plaintiff's claims on the foregoing grounds, the Court finds no reason to address Defendants' qualified immunity arguments.